UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GRANT GOSCH,<br><br>              Plaintiff,<br><br>   v.<br><br>STATE OF IDAHO; IDAHO DEPARTMENT OF CORRECTION; ADA COUNTY; AND CITY OF BOISE; CORRECTIONAL OFFICER FOX; WARDEN RANDY BLADES; LIEUTENANT N. BAIRD; and ON DUTY SUPERVISOR JOHN/JANE DOE,<br><br>              Defendants. | Case No. 1:15-cv-00048-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

      Plaintiff, a prisoner in the custody of the Idaho Department of Correction (IDOC) and currently incarcerated at Idaho States Correctional Center, is proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. At the time of the events giving rise to Plaintiff's claims, he was incarcerated at the Idaho State Correctional Institution (ISCI).

      Now pending before the Court is Defendants' Motion for Summary Judgment. Petitioner did not file a response to the Motion. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and

**MEMORANDUM DECISION AND ORDER - 1**

record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following Order granting Defendants' Motion and dismissing this case without prejudice for failure to exhaust administrative remedies.

## INTRODUCTION

Petitioner signed his initial complaint in this action in November 2014. (*See* Dkt. 3.) For unknown reasons, the Court did not receive the complaint until February 2016.[1] The Court reviewed the complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, determined that the complaint failed to state a claim upon which relief could be granted, and allowed Plaintiff an opportunity to file an amended complaint. (Dkt. 9.)

Plaintiff filed an Amended Complaint, which the Court again reviewed pursuant to its screening authority under §§ 1915 and 1915A. The Amended Complaint alleged that (1) Gosh was assaulted by another inmate on September 14, 2014, (2) Defendant Fox, a correctional officer, was present at the time of the attack, (3) an unknown supervisor was in a separate viewing room at the time, and (4) Plaintiff asked for assistance while attempting to defend himself against the attack. The Amended Complaint also alleged that Defendant Baird denied Plaintiff medical treatment following the attack. (*See* Am. Compl., Dkt. 12; Order Reviewing Am. Compl., Dkt. 14.)

The Court previously concluded that the Amended Complaint stated three plausible claims for relief under the Eighth Amendment: (1) a failure-to-protect claim

---

[1] This delay has no bearing on the Court's resolution of Defendants' Motion for Summary Judgment.

**MEMORANDUM DECISION AND ORDER - 2**

against Defendant Fox; (2) a claim for inadequate medical treatment against Defendant Baird; and (3) a claim for injunctive relief against Defendant Blades. (Dkt. 14 at 12.) Plaintiff was not allowed to proceed on any other claims against any other Defendants.

In response to the Amended Complaint, Defendants filed a Motion for Summary Judgment, arguing that Plaintiff did not exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"),[2] 42 U.S.C. § 1997(e)(a). (Dkt. 23.) Plaintiff did not respond to the Motion for Summary Judgment, despite having received an extension of time to do so. (*See* Dkt. 29.) Therefore, Defendants' Motion is now ripe for adjudication.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1.  Standard of Law Governing Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

---

[2]  Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 3**

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co.*, 336 F.3d at 889.

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is

**MEMORANDUM DECISION AND ORDER - 4**

insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper

**MEMORANDUM DECISION AND ORDER - 5**

foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (citation and internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id.*

2.      **Standards of Law Governing Exhaustion of Administrate Remedies**

Pursuant to the PLRA, prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see also Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). However, an inmate need only exhaust those remedies that are "available"—that is, an inmate must exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, ___ U.S. ___,

**MEMORANDUM DECISION AND ORDER - 6**

No. 15-339, 2016 WL 3128839, at *7 (June 6, 2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

Failure to exhaust is an affirmative defense that may be asserted in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, so long as the prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). If, however, either party relies on evidence beyond the pleadings and public records, the exhaustion issue should be brought as, or converted into, a motion for summary judgment under Rule 56. *Id.*

As the PLRA intended, all motions addressing exhaustion of administrative remedies, including "disputed factual questions relevant to exhaustion[,] should be decided at the very beginning of the litigation." *Id*. at 1171. Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. However, if a genuine dispute exists as to material facts relating to an exhaustion defense such that summary judgment is inappropriate, the Court is authorized—but not required—to decide the disputed facts in an appropriate preliminary proceeding, "in the same manner a judge

**MEMORANDUM DECISION AND ORDER - 7**

rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). In all cases, "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may

**MEMORANDUM DECISION AND ORDER - 8**

promise) is operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 2016 WL 3128839 at *7.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at *8. "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted).

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

**MEMORANDUM DECISION AND ORDER - 9**

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

### 3. Undisputed Facts

Because Plaintiff did not respond to the Motion for Summary Judgment, and therefore "fail[ed] to properly address [Defendants'] assertion[s] of fact," the Court exercises its discretion to consider the facts set forth by Defendants as undisputed. Fed. R. Civ. P. 56(e)(2).[3] The relevant undisputed facts with respect to Plaintiff's use (or non-use) of the prison's administrative grievance process are as follows:

ISCI uses the established IDOC grievance process, which is attached as Exhibit A to the Affidavit of Jill Whittington, the former Grievance Coordinator at ISCI. (*See* Dkt. 23-2 & 23-3). This grievance process consists of three stages. First, any inmate with a concern is required to seek an informal resolution by filling out an offender concern form, addressed to the staff member "most capable of responding to and, if appropriate, resolving the issue." (*Id*. ¶ 5.) If the issue cannot be resolved informally through the use of a concern form, the inmate must then file a grievance form. (*Id.* ¶ 6.) A grievance form must be submitted within 30 days of the incident giving rise to the grievance.

---

[3] Plaintiff did file a declaration from another inmate regarding Plaintiff's submission of concern forms to the prison administration. (Decl. of Zachary Richardson, Dkt. 28.) However, as explained below, that Declaration does not create a genuine dispute of material fact, because the Declaration does not contain any information, based on that inmate's personal knowledge, tending to show that Plaintiff fully exhausted available administrative remedies with respect to his current claims.

**MEMORANDUM DECISION AND ORDER - 10**

When submitting a grievance form, the inmate must attach a copy of the concern form, showing the inmate's attempt to settle the issue informally; the grievance must also "contain specific information including the nature of the complaint, dates, places, and names." (*Id.* ¶ 7.) If the grievance form is incomplete or is not completed correctly, "it is noted into the Corrections Integrated System ('CIS'), which is an electronic database used to log offender grievances and grievance appeals." (*Id.*) The grievance is then returned to the inmate, along with a description of the grievance's deficiencies. The inmate is allowed the opportunity to correct the deficiencies and resubmit the grievance. "The process ends here unless and until the Grievance Form is properly completed." (*Id.*)

If a grievance is correctly completed, the grievance coordinator "enters the grievance information into CIS, and then the grievance is assigned to the staff member most capable of responding" to the grievance. (*Id.*) That staff member responds to the grievance, and "the information is then forwarded by the Grievance Coordinator to a 'reviewing authority,' who is usually a deputy warden." (*Id.*) The reviewing authority reviews the staff member's response to the grievance and issues a decision denying, modifying, or granting the inmate's grievance. The grievance response is then returned to the inmate.

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision within 14 days of receiving the grievance response. (*Id.* ¶ 8.) The "appellate authority," who reviews grievance appeals, is generally the warden. (*Id.* ¶ 9.) After the appellate authority decides the grievance appeal, the inmate receives

**MEMORANDUM DECISION AND ORDER - 11**

the response, and "a copy of the printed grievance, the original Grievance/Appeal form, and copies of all attachments" are filed "in the facility administration area." Not until the completion of all three of these steps—concern form, grievance form, and grievance appeal—is the grievance process exhausted. (*Id.* at ¶ 10.)

The events giving rise to Plaintiff's claims occurred on September 14, 2014. (Am. Compl., Dkt. 12, at 2.) According to the CIS, Plaintiff submitted two grievances between that date and September 30, 2015. (Whittington Aff. ¶ 12.) The first grievance, submitted on October 6, 2014 while Plaintiff was incarcerated at ISCI, complained of an issue with the commissary. Because there were no concern forms attached to the grievance as required by IDOC policy, the grievance was returned to Plaintiff "with an explanation of its deficiency." Plaintiff did not resubmit the grievance. (*Id*. ¶ 13 and Ex. C.) Plaintiff was transferred out of ISCI on November 3, 2014. (Am. Compl. at 2.) The record establishes that Plaintiff did not exhaust "any grievance regarding an attack on his person, failure of a correctional officer to protect him, inadequate medical care, or any other conditions of confinement at ISCI." (*Id*. ¶ 16.)

On January 2015, while he was incarcerated at ISCC, Plaintiff submitted a second grievance, complaining of a safety issue in his unit. Again, Plaintiff had not attached any concern forms to the grievance, and it was returned to Plaintiff without action. Plaintiff "did not make any attempt a re-filing a corrected grievance or appealing such," and the claims in the grievance remained unexhausted. (Whittington Aff. ¶ 14 and Ex. C.)

**MEMORANDUM DECISION AND ORDER - 12**

4.  **Defendants Are Entitled to Summary Judgment Because Plaintiff Did Not Exhaust Available Administrative Remedies**

Defendants have met their initial burden of establishing that the prison had an administrative grievance process and that Plaintiff did not exhaust that process. *See Albino*, 747 F.3d at 1172. Plaintiff did not submit any grievance at all regarding the incident at ISCI on September 15, 2014—the only grievance Plaintiff submitted regarding ISCI had to do with the prison's commissary. Further, both that grievance and the grievance Plaintiff later submitted at ISCC were not properly submitted because Plaintiff did not attach the required concern forms. Therefore, the burden shifts to Plaintiff to show "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Plaintiff has failed to do so. There is nothing in the record suggesting that Plaintiff was incapable of knowing the appropriate grievance procedures, that he received confusing or contradictory information regarding those procedures, or that prison staff took any action, such as threatening Plaintiff with retaliation, that interfered with Plaintiff's efforts to exhaust. *See id.* at 1172-73; *McBride*, 807 F.3d 987.

Plaintiff has submitted a declaration from another inmate, Zachary Richardson, who asserts that he witnessed Plaintiff filling out concern forms regarding Plaintiff's "segregation stay prior to his movement into Unit 11." (Richardson Decl. at 1.) However, the declaration does not contradict Defendants' recitation of facts, because Defendants do not claim that Plaintiff failed to fill out concern forms; rather, they have submitted

**MEMORANDUM DECISION AND ORDER - 13**

evidence that (1) Plaintiff did not *attach* any concern forms to the grievances that he submitted, which is required by the IDOC grievance policy, (2) Plaintiff did not resubmit any grievance with the required concern forms, and (3) Plaintiff did not file a grievance or grievance appeal with respect to the September 14, 2014 incident at ISCI or his medical treatment in the wake of the incident.

Further, although Inmate Richardson states in his Declaration that Plaintiff "never received a response to [his concern forms] nor directions from staff as how to properly attain [sic] his correspondence while segregated" (Richardson Decl. at 1), this statement is not based on personal knowledge. Richardson does not allege that he was in Plaintiff's presence the entire time Plaintiff was incarcerated at ISCI and, thus, available to witness every conversation and every interaction that any staff member had with Plaintiff. Plaintiff himself has not provided a declaration or an affidavit attesting that he had no way of knowing the required grievance procedures or that he was somehow prohibited from fully exhausting the grievance process. Therefore, there is no evidence from which a factfinder could conclude that Plaintiff exhausted available administrative remedies.

## CONCLUSION

Defendants have submitted evidence establishing that, at of time of the events giving rise to Plaintiff's claims, the prison had grievance procedures in place and that Plaintiff did not exhaust those procedures. Defendants' evidence is uncontroverted, and Plaintiff has not raised a genuine dispute as to any material fact. Therefore, Defendants are entitled to judgment as a matter of law.

**MEMORANDUM DECISION AND ORDER - 14**

**ORDER**

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 23) is GRANTED.

2. This entire action is DISMISSED without prejudice.

DATED: **June 10, 2016**

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 15**